**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| **Nestor D. Murillo-Flores,**<br>Petitioner<br>-vs-<br>**Michael B. Mukasey, et al.,**<br>Respondents | CV-08-0943-PHX-JAT (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2241** |

## I. MATTER UNDER CONSIDERATION

Petitioner, incarcerated at the time in the Pinal County Detention Facility, in Florence, Arizona, filed through counsel an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on May 20, 2008 (#2). On July 9, 2008, Respondent Altman filed his Answer (#22), and on July 10, 2008, Respondents Mukasey, *et al.* filed their Response (#23). Petitioner filed a Reply on July 16, 2008 (#25).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

Petitioner, approximately 30 years old, is a native and citizen of Mexico, who entered the United States in 1982. He was married to a U.S. citizen in 1996, and was rearing four U.S. born children, while living in California. In 1997, his spouse applied to the INS for an adjustment of status for Petitioner as an alien relative. That petition was denied in 2006.

While in the U.S., Petitioner incurred two misdemeanor convictions, including: a 1999 conviction for obstructing a police officer, and a 2003 conviction for false representation to a police officer. In 2006, he was charged with misdemeanor possession of Vicodin, but the charges were dismissed upon completion of a deferred prosecution program.

On March 12, 2007, Petitioner was convicted of misdemeanor sexual battery on his spouse. He was sentenced to 42 days in jail. (Resp. Exhibit G, BIA Dec. at 1-2; Resp. Exhibit I, Case Reports; Resp. Exhibit D, R.T. 4/16/07 at 7.)

### B. REMOVAL PROCEEDINGS

**Before Immigration Judge** - While incarcerated on the sexual battery misdemeanor, Petitioner was served with a Notice to Appear (Resp. Exhibit B) dated March 13, 2007, charging him with being removable as having entered the country illegally.

Petitioner appeared before an immigration judge on April 16, 2007, and admitted to being removable. (Resp. Exhibit D, R.T. 4/16/07 at 7-8.) Petitioner then sought relief in the form of an application for adjustment of status, and applications for asylum, withholding of removal, and protection under the Convention Against Torture, on the basis of his facial tattoos and physical appearance. (Resp. Exhibit G, BIA Dec. at 2.)

The immigration judge granted the application for adjustment of status, and deferred ruling on the application for asylum, etc. (*Id.*)

**Before Board of Immigration Appeals** - The government appealed the immigration judge's decision to the Board of Immigration Appeals, who found that the immigration judge had abused his discretion in granting Petitioner an adjustment of status. (*Id.* at 3-4.) The matter was then remanded for a determination of Petitioner's other applications for relief.

**On Remand Before IJ** - The matter was set for hearings before the immigration judge on July 24, 2008. At that time, the immigration judge set the matter for hearing on October 17, 2008. Accordingly, Petitioner's various applications for relief remain pending.

//

//

## C. BOND PROCEEDINGS

**Original Bond Determination** - At the time of service of the original Notice to Appear, a Notice of Custody Determination (Resp. Exhibit C) was also served, directing Petitioner's detention by the INS without bond.

**Order to Release on Bond** -  On April 1, 2008, while matters were pending on remand to the immigration judge, Petitioner sought to be released on bond.  The immigration judge heard the request, and on April 8, 2008, issued an Order (Pet. Exhibits) directing that Petitioner be released upon $5,000 bond.  A formal decision on the bond was issued May 13, 2008.   (Resp. Exhibit H.)

**Appeal to BIA** - On April 24, 2008, the government appealed the grant of bond to the Board of Immigration Appeals.  (Resp. Exhibit M, Not. Appeal.)   As a result, an automatic stay of the immigration judge's bond decision came into effect pursuant to 8 C.F.R. § 1003.19(i)(2), which provides:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

On July 17, 2008, the BIA determined that Petitioner is a danger to the community, reversed the decision of the immigration judge and ordered Petitioner detained without bond. (Status Report #27, Exhibit A.)

**Current Custody** - Petitioner continues in the custody of the government at the Pinal County Jail, pursuant to an intergovernmental services agreement between the federal government and the County.  (Altman Answer, #22 at 1.)

## D. PRESENT HABEAS PROCEEDINGS

Petitioner commenced the current habeas proceedings on May 19, 2008, by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  On May 20, 2008,

Petitioner filed an Amended Petition (#2), along with a Memorandum in Support, and various exhibits, which were supplemented on May 27, 2008 (#6). Petitioner's petition argues that his continued detention is a violation law and the Constitution because:

1. **Automatic Stay** - The automatic stay of the immigration judge's bond determination, as provided for under 8 C.F.R. § 1003.19(i)(2), is a violation of 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1.

2. **Substantive Due Process** - His continued detention, especially under the automatic stay provisions, "has become so prolonged that it is no longer reasonably related to its purpose of effective removal and therefore violates the Due Process Clause of the Fifth Amendment to the United States Constitution." (Amend. Pet., #2 at 8.)

3. **Procedural Due Process** - The application of the automatic stay under § 1003.19(i)(2) "has deprived him of access to an impartial adjudicator and the right to be heard at a meaningful time and in a meaningful manner before a deprivation of liberty," thus denying him procedural due process. (*Id.* at 9.)

Petitioner named as respondents Attorney General Mukasey, DHS Secretary Chertoff, ICE Field Office Director Kane, and Pinal County Chief Deputy Altman.

On July 9, 2008, Respondent Altman filed an Answer (#22) arguing that his custody of Petitioner was pursuant to an intergovernmental services agreement, and deferring to DHS and its agencies to respond to the validity of their custody of Petitioner.

On July 10, 2008, the federal Respondents filed their Response (#23), arguing that Petitioner's detention is proper. Respondents argue that because Petitioner's removal proceedings are ongoing, his detention is at the discretion of the Attorney General, and that such discretion is beyond review in habeas proceedings. Respondents argue that detention under the automatic stay is authorized and constitutional. Respondents further argue that Petitioner's continued detention is justified because he has been properly determined to be a danger to the community and a flight risk. In this regard, Respondents point to Petitioner's criminal history, tattoos indicating gang membership, anti-social stance indicated by the

tattoo "FUCK the World" on his forehead, and two disciplinary actions while detained.

On July 16, 2008, Petitioner filed his Reply (#25), arguing that his tattoos are the result of his diagnosed condition of "Body Dysmorphic Disorder," and that at least one detention officer characterizes Petitioner's behavior favorably. Petitioner further argues that he is not challenging the exercise of discretion by the Attorney General, the immigration judge, or the BIA, but simply the constitutionality of his prolonged detention, and that habeas jurisdiction exists to consider that issue. Finally, Petitioner argues that his detention under the automatic stay of the immigration judge's release order is unconstitutional.

**OSC re Moot Claims** - On July 17, 2008, the BIA determined that Petitioner is a danger to the community, reversed the decision of the immigration judge and ordered Petitioner detained without bond. (Status Report #27, Exhibit A.) Consequently, the undersigned entered an Order (#29) on September 17, 2008, directing Petitioner to show cause why Grounds 1 and 3 of the Petition should not be dismissed as moot. Petitioner has not responded to that order.

### III. APPLICATION OF LAW TO FACTS
#### A.  GROUNDS 1 AND 3:  CHALLENGES TO AUTOMATIC STAY

In Grounds 1 and 3, Petitioner challenges the automatic stay of the immigration judge's bond determination, upon appeal of that decision by the Government, as provided for under 8 C.F.R. § 1003.19(i)(2).  In Ground 1, he argues that his detention under the automatic stay  is a violation of 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1.  In Ground 3, he argues that it is a denial of procedural due process.

Petitioner's detention under the automatic stay has terminated.  On July 17, 2008, the BIA reversed the immigration judge's decision and ordered Petitioner detained without bond. (Status Report #27, Exhibit A.)  Despite being ordered to do so, Petitioner has failed to show that these grounds for relief have not been rendered moot by termination of the automatic stay.  Because Petitioner is no longer detained under the automatic stay, this Court may no longer grant any relief as to Grounds 1 and 3, and they must be dismissed as moot.  *See*

*Flores-Torres v. Mukasey,* 548 F.3d 708, 710 (9th Cir. 2008) (dismissing as moot portion of habeas petition challenging detention without bond upon grant of bond hearing).

## B. GROUND 2: SUBSTANTIVE DUE PROCESS

In his Ground 2, Petitioner argues that his continued detention "has become so prolonged that it is no longer reasonably related to its purpose of effective removal and therefore violates the Due Process Clause of the Fifth Amendment to the United States Constitution." (Amend. Pet., #2 at 8.) Petitioner argues that the expected administrative and judicial appeals will extend his detention beyond an acceptable length of time. (Reply, #25 at 23.)[1]

**Jurisdiction** - Title 28 U.S.C. § 2241 authorizes the district courts to issue habeas corpus relief where a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241 confers jurisdiction upon the federal courts to consider cases challenging the detention of aliens during deportation proceedings. *Demore v. Kim*, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678 (2001). Although the REAL ID Act of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging orders of removal, district courts retain subject matter jurisdiction over § 2241 petitions challenging the legality of an alien's detention. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir.2006).

Respondents rightly point out that the Attorney General's discretion over detention issues is not subject to judicial review, as provided in 8 U.S.C. § 1226(e). However, as recognized in *Kim*, a challenge to the constitutionality of the statute's authorization of that discretion is not beyond review by § 1226(e).

> But respondent does not challenge a "discretionary judgment" by the

---

[1] Petitioner clarifies in his Reply that he does not challenge "the bond decision of the Immigration Judge or the BIA. The Petitioner is challenging the constitutionality of his prolonged detention beyond the period found presumptively reasonable by the U.S. Supreme Court and Court of Appeals." (Reply #25 at 5.) Moreover, the termination of the automatic stay renders moot the arguments on Ground 2 based upon on the application of such stay.

- 6 -

> Attorney General or a "decision" that the Attorney General has made regarding his detention or release. Rather, respondent challenges the statutory framework that permits his detention without bail.

*Kim,* 538 U.S. at 516-517. Accordingly, this Court has jurisdiction to determine if the statute's authorization of the Attorney General to continue Petitioner's detention violates the Constitution.

**Detention Authorized By Statute** - Section 1226 of the Immigration code authorizes detention of aliens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention is made mandatory for certain inadmissible or criminal aliens. 8 U.S.C. § 1226(c).[2] Except for such mandatory detention cases, the Attorney General is given authority to release the alien on conditions or bond. 8 U.S.C. § 1226(a)(2). Petitioner's removal decision is still pending before the Immigration Court, following remand by the BIA for consideration of Petitioner's claims for relief from removal.[3]  (Resp. Exhibit G, BIA Dec. at 2.)

**Constitutional Limits on Detention** - As a general proposition, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Kim*, 538 U.S. at 531. However, Petitioner argues that his detention, which has now continued for some 22 months, is simply too long.

In *Zadvydas*, the Supreme Court addressed the sometimes extended detention of aliens during removal processes. The Court acknowledged that there are due process limits beyond which detention fails to serve its purported purposes, and thus is not constitutionally permissible. "A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas,* 533 U.S. at 690.

*Zadvydas* Not Controlling - Although *Zadvydas* stands for the broad proposition that

---

[2] Petitioner is not mandatorily detained, and has been afforded a bond determination. Thus, he cannot rely upon cases such as *Ulanday v. Kane*, 2008 WL 1989792 (D.Ariz. May 5, 2008), which are based upon the denial of a bond hearing to such detainees. (*See* Reply #25 at 24, citing *Ulanday*.)

[3] In his July 30, 2008 Status Report (#28), Petitioner suggests that a final administrative order on his removal is not expected until Spring, 2009.

1  the detention of aliens is not without limits, that case is not controlling here. The Court in
2  *Kim* distinguished between the valid detention there where the alien's removal proceedings
3  were continuing, and that at issue in *Zadvydas*, where the removal proceedings were
4  complete. The *Kim* Court noted that in *Zadvydas* "removal was no longer practically
5  attainable" and that "the period of detention at issue in Zadvydas was 'indefinite' and
6  'potentially permanent.' " 538 U.S. at 527-28.

7  Similarly, Petitioner's removal proceedings are continuing, not complete. While his
8  detention has been lengthy, its length is attributable to the administrative and judicial
9  processes, and it has a definite termination point. Upon completion of judicial review of his
10  petition, the stay of the removal order will be lifted. Moreover, Petitioner has made no
11  showing that his removal is not practically attainable. Upon issuance of a ruling adverse to
12  Petitioner, there is no reason to believe that Petitioner's removal to Mexico could not be
13  completed forthwith.

14  <u>No Simple Limits on Length of Pre-Removal Period Detention</u> - Neither the Ninth
15  Circuit nor the Supreme Court has never placed any absolute limits on the length of an
16  alien's detention. In *Kim*, the Court noted that removal proceedings, and therefore detention
17  under § 1226, normally lasts only 90 days, a length of time which *Zadvydas* would have
18  found presumptively reasonable. 538 U.S. at 529. However, the Court did not adopt any
19  time limitations on detention. Indeed, they noted that appeals would lengthen the process,
20  and dismissed any deterrent effect, noting:

21  > ""the legal system ... is replete with situations requiring the making of difficult judgments as to which course to follow," and, even in the
22  > criminal context, there is no constitutional prohibition against requiring parties to make such choices.

23  538 U.S. at 531, n. 14.[4]

24

---

25  [4] In his concurrence in *Kim*, Justice Kennedy noted that "[w]ere there to be an
26  unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to
27  protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Kim*,
28  538 U.S. at 532-533 (Kennedy, J. , concurring). Petitioner offers nothing to show that the government has acted in anyway to significantly prolong these proceedings. Moreover, it

- 8 -

Since *Kim*, the Ninth Circuit has found that the mere length of delay in a pre-removal period custody does not raise constitutional concerns, even where that detention has extended far past the 22 months of Petitioner's detention.

> Although Casas' nearly seven-year detention certainly qualifies as prolonged by any measure, we hold that the government retains authority to detain him under § 1226(a) because Casas faces a significant likelihood of removal to Colombia once his judicial and administrative review process is complete.

*Casas-Castrillon v. Department of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008). *But see Singh v. Sepulveda*, 2008 WL 2242215 (N.D. Cal. 2008) (finding seven year detention violated due process, where removal proceedings on-going).[5]

<u>Exceptional Cases</u> - It is true that in *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006), the court found a probability that removal was not reasonably foreseeable, while removal proceedings were still under way. There, however, the situation was far more complex and far more resolute than Petitioner's routine proceedings.

In *Nadarajah*, the petitioner was a native of Sri Lanka who had been granted asylum and relief under the Convention Against Torture by the immigration judge, and upon appeal of the asylum decision and remand from the BIA, had again been granted asylum by the IJ. That decision had been upheld on review by the BIA. However, the BIA had then undertaken the unusual move of referring the matter back to the IJ to allow the government to update its investigations, and then referred the matter to the Attorney General for a determination of whether he desired to exercise discretion to review the matter *de novo*. 443

---

was not the sheer length of time in removal proceedings that Justice Kennedy thought would raise constitutional concerns, but rather the inference that the delay and prolonged detention was for illicit purposes. Rather, it appears that the parties have both been litigating the matter in good faith.

[5] Petitioner relies upon *Singh*, citing the similarities with his case (e.g. a reversal by the BIA of a bond grant, the minor nature of the criminal history and sentence as compared to the length of detention, etc.). (Reply, #25 at 24-26.) The undersigned is unconvinced by the reasoning of *Singh*, however appealing, to ignore the Supreme Court's acceptance of such long term detention in *Kim*, and to reject the subsequent holding of *Casas-Castrillon* that even a seven year detention is not too long.

F.3d at 1075. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1065, n. 9 (9th Cir. 2008) (distinguishing *Nadarajah* as involving an "unusual move", with no "established timeline" for decision, taking up to nine years for decision). Unlike *Nadarajah*, Petitioner has not been been placed in administrative limbo akin to the BIA's referral of the case to the Attorney General in *Nadarajah*. Rather, the litigation of his removal has proceeded apace through normal channels, and has not been shuttled into some administrative backwater.

In finding in *Nadarajah* that removability was not foreseeable, the Ninth Circuit noted that the despite being given "every opportunity to do so," the government had not rebutted the petitioner's showing that he could not be removed to Sri Lanka, and that there was no other country for removal. In contrast, Petitioner has not offered anything to show that upon an adverse resolution of his proceedings he cannot be removed.[6]

<u>No-Bond-Determination Cases Not Applicable</u> - Further, Petitioner cannot rely upon the line of cases addressing the constitutionality of prolonged detention without provision for a bond determination. *See e.g. Tijani v. Willis,* 430 F. 3d 1241 (9th Cir. 2005) (mandatory detention without bond determination permitted only during "expeditious" removal proceedings); and *Casas-Castrillon v. Department of Homeland Sec.,* 535 F.3d 942, 948 (9th Cir. 2008) (discretionary detention decisions to be made by bond hearing before immigration judge). Petitioner has had his bond determination before the Immigration Court and the BIA.

**<u>Summary</u>** - Petitioner has failed to show that his current detention is not authorized by statute, or that it is a violation of due process. While his detention has been long, it remains properly related to his ongoing removal proceedings, and he has been accorded an

---

[6] Similarly, Petitioner's reliance on *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) is misplaced. (*See* Reply, #25 at 22.) In *Ly*, the Sixth Circuit relied upon the impossibility of removal to find a denial of due process:

> Actual removal of Ly from the United States was never a possibility during this process. Vietnam has not and does not accept deportees because there is no repatriation agreement between the United States and Vietnam.

351 F.3d at 266 n. 1. Only in such a case "when actual removal is not reasonably foreseeable," did the *Ly* court conclude that due process limited the pre-removal period detention. *Id.* at 273.

independent bond determination by the Immigration Court and the BIA.  Nothing more is required.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed May 20, 2008 (#2) be **DENIED.**

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: January 8, 2009

_____
JAY R. IRWIN
United States Magistrate Judge

S:\Drafts\OutBox\08-0943-002r RR 08 09 15 re HC.wpd

- 11 -